LYONS, Justice.
The Cincinnati Insurance Company (“Cincinnati”), the defendant in a putative class action filed by Ray Peacock, has filed a petition for a writ of mandamus requesting that this Court direct the trial court to dismiss Peacock’s claims against Cincinnati because, Cincinnati argues, the trial court lacked subject-matter jurisdiction and Peacock failed to exhaust his administrative remedies. We grant the petition and issue the writ.

Factual Background and Procedural History

The Motor Vehicle Safety-Responsibility Act, § 32-7-1 et seq., Ala.Code 1975, provides that motor-vehicle liability insurance policies in Alabama must include uninsured/underinsured-motorist (“UM”) coverage, unless the insured rejects such coverage. See § 32-7-23(a), Ala.Code 1975. In a practice commonly known as “stacking,” insureds who suffer a single loss may obtain benefits under multiple UM coverages. This Court has described the practice in a case involving the stacking of UM coverage under multiple policies, stating:
“In Alabama, if the insured’s loss exceeds the coverage limits of one policy providing for underinsured-motorist benefits, then the insured can stack other policies with underinsured-motorist benefits to provide coverage to the full amount of the damages required to compensate for the injury or harm sustained. Canal Indem. Co. v. Burns, 682 So.2d 399, 401 (Ala.1996) (stating that ‘the insured may stack the coverages provided by other uninsured motorist policies to cover up to the amount of damages required to compensate for the actual injury sustained’); State Farm Mut. Auto. Ins. Co. v. Fox, 541 So.2d 1070, 1072 (Ala.1989) (stating that ‘where the loss exceeds the limits of one uninsured motorist policy, the insured may stack other uninsured motorist policies to cover up to the actual damages sustained’).”
Smith v. State Farm Mut. Auto. Ins. Co., 952 So.2d 342, 349-50 (Ala.2006).
Section 32-7-23(c) limits the number of coverages that may be stacked under a single policy. That subsection provides: “The recovery by an injured person under the uninsured provisions of any one contract of automobile insurance shall be limited to the primary coverage plus such additional coverage as may be provided for additional vehicles, but not to exceed two additional coverages within such contract.” Accordingly, § 32-7-23(c) limits stacking so that an injured insured may obtain benefits by stacking a maximum of three UM coverages per policy. See Smith, supra.
On April 8, 2008, Peacock sued Cincinnati in the Tallapoosa Circuit Court, asserting claims both individually and on behalf of a putative class. Peacock alleged that, because an insured may stack a maximum of three UM coverages per loss, both by statute and by the terms of Cincinnati’s standard policy forms, UM coverage for more than three vehicles under a multi-vehicle policy — e.g., UM coverage for four, five, or six vehicles — is “unnecessary, illusory, and provides no benefit to the purchaser of the policy.” Peacock alleged that Cincinnati “engages in a wide-spread and ongoing practice of imposing premiums for additional UM coverages on additional vehicles (i.e., beyond three (3)) when issuing multi-vehicle policies in Alabama, despite the fact that an insured could never utilize the additional UM coverages.” *301 (Emphasis in original.) “Thus,” Peacock alleged, Cincinnati “overcharges for UM coverage it knows it will never have to provide.”
Peacock asserted claims of breach of contract, fraudulent misrepresentation, fraudulent suppression, and unjust enrichment. His complaint defines the potential class as “[a]ll Alabama citizens and entities in the state of Alabama who have paid to [Cincinnati] monies for additional UM coverage on more than three (3) vehicles covered under a multi-vehicle insurance policy issued by [Cincinnati].” Peacock’s complaint seeks damages, for himself and the putative class, only in the form of “restitution or disgorgement of monies paid for the [allegedly] unnecessary and illusory UM coverage.” On the unjust-enrichment claim, Peacock seeks the imposition of a constructive trust on the same funds. Peacock expressly abandons all other forms of monetary damages. He seeks a judgment declaring a) that “the imposition and collection of additional UM premiums for coverage ... is unnecessary, illusory, and provides no additional benefit to the policy purchaser”; and b) that Cincinnati’s “receipt and retention of monies paid for such illusory coverage ... is improper and [the moneys] should be returned to policyholders.”
On May 5, 2009, Cincinnati moved to dismiss Peacock’s action under Rule 12(b)(1), Ala. R. Civ. P., arguing that the trial court lacked subject-matter jurisdiction over Peacock’s claims. Specifically, Cincinnati argued that the Commissioner of Insurance (“the commissioner”) and the Alabama Department of Insurance (“the Department”) have broad authority over the matters made the subject of Peacock’s complaint; that Peacock had failed to exhaust his administrative remedies; and that Peacock’s claims were barred by the filed-rate doctrine. With its motion, Cincinnati submitted the deposition of Myra Frick, a rate manager with the Department. In her affidavit, Frick stated, among other things, that the Department had approved Cincinnati’s rates and forms related to UM coverage. Frick explained that, by approving Cincinnati’s rates and forms, the Department had determined that the rates and forms were not unreasonably high, inadequate, discriminatory, or misleading.
The parties thereafter engaged in discovery, and on July 23, 2009, Cincinnati moved the trial court to set its motion to dismiss for a hearing. Peacock objected, arguing that Cincinnati had not responded to his discovery requests and, therefore, that the matter was not ripe for a hearing. Peacock also moved the trial court to compel Cincinnati to respond to his discovery requests. On July 29, 2009, the trial court denied Cincinnati’s request for a hearing.
The parties deposed Frick on August 17, 2009. On August 19, 2009, before the deposition transcript was prepared, the trial court held a hearing on Peacock’s motion to compel. At the hearing, Peacock argued that he was entitled to additional discovery in order to respond to Cincinnati’s motion to dismiss and that Cincinnati had improperly avoided responding to his discovery requests. Cincinnati argued that the discovery Peacock sought related to the merits of his action and not to the question of subject-matter jurisdiction; that discovery on the question was unnecessary because subject-matter jurisdiction was purely a question of law; that the trial court lacked jurisdiction to compel discovery; and that the jurisdiction question should be resolved before further discovery was taken. During their arguments to the trial court, Peacock and Cincinnati disagreed regarding the content of Frick’s then untranscribed deposition testimony.
*302 On August 26, 2009, the trial court granted Peacock’s motion to compel and denied Cincinnati’s motion to dismiss. Peacock did not respond or submit evidence to the trial court in opposition to Cincinnati’s motion to dismiss before the trial court ruled on it. On September 3, 2009, Cincinnati petitioned this Court for a writ of mandamus directing the trial court to vacate its August 26, 2009, order and to grant Cincinnati’s motion to dismiss.

Standard of Review

“ ‘Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ ”
Ex parte Perfection Siding, Inc., 882 So.2d 307, 309-10 (Ala.2003) (quoting Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995)). “The question of subject-matter jurisdiction is reviewable by a petition for a writ of mandamus.” Ex parte Liberty Nat’l Life Ins. Co., 888 So.2d 478, 480 (Ala.2003). A denial of a motion to dismiss for failure to exhaust administrative remedies is also reviewable by a petition for a writ of mandamus. See Ex parte Blue Cross & Blue Shield of Alabama, 582 So.2d 469, 472-73 (Ala.1991) (dealing with a claim of failure of an insured to exhaust administrative remedies under the Alabama Insurance Code and stating: “However, because the trial court did not make its judgment final, and therefore appeal-able, Blue Cross’s appeal in this case (case 1900471) is due to be dismissed, but we will address the issues presented in Blue Cross’s petition for a writ of mandamus or prohibition or both (case 1900470), which is properly before this Court.”).

Analysis

In its mandamus petition, Cincinnati argues that the trial court lacks subject-matter jurisdiction over Peacock’s claims based on both the filed-rate doctrine and on Peacock’s failure to pursue administrative remedies through the commissioner and the Department. Cincinnati argues that its motion to dismiss should have been granted based on the face of the complaint and on the evidence Cincinnati presented with its motion.
In his answer to Cincinnati’s petition, Peacock maintains that the filed-rate doctrine does not apply to his claims and that he was not required to pursue administrative remedies. Peacock argues throughout his answer that he is not challenging Cincinnati’s rate calculations or its premiums for UM coverage; instead, Peacock argues, he challenges Cincinnati’s “business practice” of requiring insureds who desire multi-vehicle policies to accept UM coverage for either all or none of the insureds’ vehicles.
The current commissioner, Jim L. Ri-dling, has filed an amicus curiae brief in which he states his position that “claims like [Peacock’s] must first be raised with the affected insurer and then with the Commissioner according to the statutory process the Legislature has devised.” Commissioner’s brief, at 1. Alternatively, Commissioner Ridling agrees with Cincinnati that the filed-rate doctrine applies to bar Peacock’s claims. Alfa Mutual Insurance Company and the Property Casualty Insurers Association of America have also filed amici curiae briefs supporting Cincinnati’s positions and addressing the merits of Peacock’s claims that Cincinnati’s provision of UM coverage for more than three vehicles is illusory.[1]
*303 We must examine the circumstances under which the Department and the commissioner have the exclusive authority to consider Peacock’s claims, thus depriving the trial court of jurisdiction, and the circumstances under which Peacock might have a remedy in proceedings before the Department or before a judicial forum. We view the allegations of Peacock’s complaint in light of the authority granted the commissioner and the Department under the Alabama Insurance Code, § 27-1-1 et seq., Ala.Code 1975 (“the Insurance Code”).
I. The Statutory Authority of the Commissioner
“Our inquiry is governed by settled principles of statutory construction:
“ ‘ “The fundamental rule of statutory construction is that this Court is to ascertain and effectuate the legislative intent as expressed in the statute. League of Women Voters v. Renfro, 292 Ala. 128, 290 So.2d 167 (1974). In this ascertainment, we must look to the entire Act instead of isolated phrases or clauses; Opinion of the Justices, 264 Ala. 176, 85 So.2d 391 (1956).”
“ ‘Darks Dairy, Inc. v. Alabama Dairy Comm’n, 367 So.2d 1378, 1380 (Ala.1979) (emphasis added). To discern the legislative intent, the Court must first look to the language of the statute. If, giving the statutory language its plain and ordinary meaning, we conclude that the language is unambiguous, there is no room for judicial construction. Ex parte Waddail, 827 So.2d 789, 794 (Ala.2001). If a literal construction would produce an absurd and unjust result that is clearly inconsistent with the purpose and policy of the statute, such a construction is to be avoided. Ex parte Meeks, 682 So.2d 423 (Ala.1996).’
“City of Bessemer v. McClain, 957 So.2d 1061, 1074-75 (Ala.2006).”
Bright v. Calhoun, 988 So.2d 492, 497-98 (Ala.2008). Furthermore, this Court has stated that its “role is not to displace the legislature by amending statutes to make them express what we think the legislature should have done. Nor is it this Court’s role to assume the legislative prerogative to correct defective legislation or amend statutes.” Siegelman v. Chase Manhattan Bank (USA), Nat’l Ass’n, 575 So.2d 1041, 1051 (Ala.1991).
The Insurance Code grants the commissioner the authority to enforce the statutes and regulations governing insurance providers in Alabama. See § 27-2-7, Ala. Code 1975. Particularly, the commissioner, and under the commissioner’s authority, the Department, has the authority to regulate insurance rates and forms. See, e.g., §§ 27-2-7, 27-2-8, 27-13-1 et seq., 27-14-8, and 27-14-9, Ala.Code 1975.
UM insurance is a form of casualty insurance and is, therefore, governed by Chapter 13, Article 3, of the Insurance Code. See §§ 27-5-6(a)(l) and 27-13-61, Ala.Code 1975. That article requires insurers to “make rates that are not unreasonably high or inadequate for the safety and soundness of the insurer and which do not unfairly discriminate between risks in this state....” § 27-13-65, Ala. Code 1975. Insurers must submit all rates and rating plans to the Department before using or applying any rates. § 27-13-67, Ala.Code 1975. Section 27-13-68, Ala. *304 Code 1975, grants the commissioner the authority and responsibility to examine the rates and the rating plans submitted to determine whether they comply with § 27-13-65. Under § 27-13-68, the commissioner has the authority to order that noncompliant rating plans be altered. Additionally, § 27-13-68 grants the commissioner the authority to determine whether rating plans that have been previously approved “provide for, result in or produce rates which are unreasonable or inadequate or which discriminate unfairly between risks in this state” and to order insurers to alter any rating plan the commissioner determines does so.
Once the commissioner approves a rate or rating plan, the Insurance Code prohibits the insurer from deviating from that plan. See § 27-13-67 (“From and after the date of the filing of such rating plans, every insurer shall charge and receive rates fixed or determined in strict conformity therewith, except as in this article otherwise expressly provided.”); § 27-13-76 (“No insurer, or employee thereof, and no broker or agent shall knowingly charge, demand or receive a premium for any policy of insurance except in accordance with the respective rating systems on file with, and approved by, the commissioner”). Insurers may alter rates and rate plans only with the approval of the commissioner in accordance with procedures established in § 27-13-76, Ala.Code 1975. Furthermore, the Insurance Code prohibits insurers from reducing premiums except in accordance with rating systems approved by the commissioner. § 27-12-14(a), Ala.Code 1975.
The Insurance Code also grants the commissioner authority to regulate the insurance contract. Particularly, § 12-14-8, Ala.Code 1975, requires that all insurance policies, application forms, contracts, printed riders, endorsement forms, and forms of renewal certificates be approved by the commissioner. Section 27-14-9, Ala.Code 1975, authorizes the commissioner to disapprove any such form if the form:
“(1) Is in any respect in violation of, or does not comply with, [the Insurance Code];
“(2) Contains or incorporates by reference, where such incorporation is otherwise permissible, any inconsistent, ambiguous, or misleading clauses or exceptions and conditions which deceptively affect the risk purported to be assumed in the general coverage of the contract;
“(3) Has any title, heading or other indication of its provisions which is misleading;
“(4) Is printed, or otherwise reproduced, in such manner as to render any provision of the form substantially illegible; or
“(5) Contains provisions which are unfair, or inequitable, or contrary to the public policy of this state or which would, because such provisions are unclear or deceptively worded, encourage misrepresentation.”
Additionally, § 32-7-23(a), the section of the Motor Vehicle Safety-Responsibility Act requiring insurers to offer UM coverage, requires that policy provisions relating to UM coverage be approved by the commissioner.
Section 27-2-7(6) of the Insurance Code grants the commissioner broad investigative authority. That subsection provide:
“The commissioner shall ... [c]onduct such examinations and investigations of insurance matters, in addition to examinations and investigations expressly authorized, as he or she may deem proper to determine whether any person has violated any provision of this title or to secure information useful in the lawful *305 administration of any such provision .... ”
Regarding rates, Chapter 13, Article 3, grants the commissioner even greater authority to inquire into and to examine the records and business practices of casualty insurers. Section 27-13-74, Ala.Code 1975, states:
“The commissioner may, whenever he deems it expedient, but at least once in every five years, make, or cause to be made, an examination of the business, affairs and method of operation of each rating organization doing business in this state and a like examination of each insurer making its own rates.... The officers, managers, agents, and employees of such rating organization or insurer making its own rates shall exhibit all its books, records, documents, or agreements governing its method of operation, its rating systems and its accounts for the purpose of such examination. The commissioner, or his representative, may, for the purpose of facilitating and furthering such examination, examine, under oath, the officers, managers, agents, and employees of such rating organization or insurer making its own rates.”
The legislature, therefore, has granted the commissioner the authority not only to inquire into the rates applied and premiums charged by casualty insurers, but also to inquire into a casualty insurer’s “business, affairs and method of operation.” Id.
The Insurance Code also grants the commissioner the authority to hold hearings and provides for judicial review of the commissioner’s decisions. Generally, the Insurance Code requires the commissioner to hold hearings upon written demand of any person aggrieved by an act, a threatened act, or a failure of the commissioner. See § 27-2-28(b), Ala.Code 1975. Once the commissioner has issued a decision, or if the commissioner refuses to hold a hearing, the aggrieved party may appeal to the Montgomery Circuit Court. See § 27-2-32, Ala.Code 1975.
Specifically regarding rates, the Department may require insurers to furnish “all pertinent information” regarding a rate to persons affected by the rate. See § 27-13-70, Ala.Code 1975. Section 27-13-71, Ala.Code 1975, requires insurers to provide a means by which persons affected by a rate “may be heard on a written application to reduce such rate.” That section then states:
“If such rating organization or such insurer shall refuse to reduce such rate, the person, or persons, affected thereby may make a like application to the commissioner within 30 days after receipt of notice in writing that the application for reduction of rate has been denied by such rating organization or by such insurer .... The commissioner shall fix a time and place for hearing on such application, upon not less than 10 days’ notice by registered or certified mail, for the applicant and such rating organization or such insurer to be heard. The commissioner shall make such order as he shall deem just and lawful upon the evidence placed before him at such hearing.”
Section 27-13-81, Ala.Code 1975, then provides a means by which the commissioner’s decisions may be reviewed by the Montgomery Circuit Court and then by the Court of Civil Appeals.
II. The Filed-Rate Doctrine
The filed-rate doctrine limits judicial review of rates that have been approved by regulatory agencies. Describing the doctrine in a case involving an insurance rate approved by the commissioner, this Court has stated: “The filed- *306 rate doctrine provides that once a filed rate is approved by the appropriate governing regulatory agency, it is per se reasonable and is unassailable in judicial proceedings.” Birmingham Hockey Club, Inc. v. National Council on Compensation Ins., Inc., 827 So.2d 73, 78 n. 4 (Ala.2002) (emphasis added). The bar of the filed-rate doctrine goes to the court’s jurisdiction over the subject matter. See Birmingham Hockey Club, 827 So.2d at 83 n. 11 (“Because the filed-rate doctrine prohibits collateral challenges to rates properly approved by the insurance commissioner, any such challenge raised in the courts is due to be dismissed.” (citing Allen v. State Farm Fire & Cas. Co., 59 F.Supp.2d 1217, 1227-29 (S.D.Ala.1999))). Accordingly, when an insured challenges the rates of an insurer that have been approved by the commissioner, the filed-rate doctrine precludes judicial review.
We note that, with regard to the statutory procedure for seeking a reduction in rates, § 27-13-71 provides a remedy for reduction from the filed rate if circumstances warrant. Therefore, proceedings under § 27-13-71 are distinguishable from an impermissible attack on the rate as filed, and such proceedings are not subject to the bar of the filed-rate doctrine. The extent to which § 27-13-71 requires exhaustion of an administrative remedy is a separate question we address below.
.III. Exhaustion of Administrative Remedies
When the insured asserts the entitlement to a reduction from the filed rate, the Insurance Code provides an administrative remedy, followed by judicial review commenced by a petition for the writ of certio-rari filed in the Montgomery Circuit Court. See §§ 27-13-71 and 27-13-81. Based on the extensive statutory scheme established by the legislature to regulate insurance, including the administrative remedies provided in §§ 27-13-71 and 27-13-81, the commissioner maintains that “insurance form and rate approval are only cognizable in the first instance by the Commissioner and the Department of Insurance, not the courts.” Commissioner’s brief, at 16. According to the commissioner, therefore, the Insurance Code vests exclusive jurisdiction over claims relating to insurance rates and forms in the commissioner and the Department. Cincinnati agrees.
In enacting the Insurance Code, the legislature granted the commissioner wide-ranging authority to regulate insurers. More specifically, the legislature has delegated to the commissioner and the Department its authority to regulate insurance rates. City of Birmingham v. Southern Bell Tel. & Tel. Co., 234 Ala. 526, 530, 176 So. 301, 303 (1937) (“That rate making is a legislative and not a judicial function is well established.” (emphasis added)). The authority to regulate rates is comprehensive. Insurers are prohibited from imposing rates other than those approved by the commissioner. See §§ 27-13-67 and 27-13-76. The commissioner also has the authority to regulate insurance forms, including UM-policy provisions. See §§ 27-14-8, 27-14-9, and 32-7-23(a). The commissioner has the authority to investigate violations of the Insurance Code, including violations relating to insurance forms and rates. See § 27-2-7(6). Furthermore, Chapter 13, Article 3, of the Insurance Code grants the commissioner broad authority to examine the casualty insurers’ business, affairs, and methods of operation. See § 27-13-74.
Peacock, citing Tindle v. State Farm General Insurance Co., 826 So.2d 144 (Ala.Civ.App.2001) (Yates, P.J., and Murdock, J., dissenting), contends that because § 27-13-71 provides that an insured “may *307 be heard by the insurer and “may” apply to the commissioner for a rate reduction, insureds are not required to seek administrative review before filing suit.[2] In Tin-dle, the Court of Civil Appeals considered whether the trial court properly dismissed a putative class action against an insurer challenging the insurer’s calculation of premiums with respect to home insurance. The Court of Civil Appeals agreed that the insured was required to exhaust administrative remedies before seeking redress through the courts. Presiding Judge Yates and then Judge Murdock dissented. Presiding Judge Yates disagreed with the majority based on her characterization of Tindle’s claims. Judge Murdock disagreed with the majority’s interpretation of § 27-13-32, Ala.Code 1975, which provides for administrative review, in the context of home insurance. Judge Murdock reasoned that, because that section states that persons affected by a rate “may” apply to the commissioner for a review of that rate, such review is not mandatory, and Tindle was not required to exhaust administrative remedies before seeking relief in the courts. Peacock argues that this Court should apply a similar reasoning in this case.
Section 27-13-71 states that if, upon application by an insured, an insurer refuses to reduce the insured’s rate, the insured “may make a like application to the commissioner within 30 days.” (Emphasis added.) Peacock contends the legislature’s use of the word “may,” rather than the word “shall,” indicates that the insured has the option of pursuing administrative remedies or pursuing remedies in court. If, however, the legislature had used the word “shall,” § 27-13-71 would impose on an insured a statutory duty to pursue administrative remedies upon every rejection of an application for a rate reduction, even where the insured is satisfied with the insurer’s explanation of the denial or where the insured lacks the means or is disinclined to pursue further action. Such a construction would lead to an unreasonable result.[3] We consider the more reasonable interpretation of “may” as used here to be an expression of the legislature’s intent that an insured lodging a complaint was not required to pursue the complaint further if it did not so desire and not the sanction of alternative remedies independent of the Insurance Code. Accordingly, the legislature’s use of the word “may” need not be read so broadly as Peacock contends and, in the context of the entire Insurance Code and the legislative authority over rate-making, discussed below, should not be so read.
Viewing the Insurance Code as a whole, see Bright, supra, as allowing a court, outside the appellate review provided for in the Insurance Code, to determine, in proceedings as to which the commissioner is not a party, that a rate approved by the commissioner is unreasonably high would allow that court to require insurers to apply rates independently of the commissioner’s involvement. Such a construction of § 27-13-71 would enable courts to interfere with the regulatory power granted the commissioner by the legislature under § 27-13-68. Furthermore, it would enable courts to require insurers in proceedings between *308 an insurer and an insured to apply unapproved rates and, therefore, to engage in conduct prohibited by other sections of the Insurance Code. See §§ 27-13-67 and 27-13-76. However, as this Court has stated in another context, “the matter of rate making is legislative, and the courts have no right to sit as a board of review to substitute their judgment for that of the Legislature, or its agents in matters within the province of either.” City of Birmingham, 234 Ala. at 531, 176 So. at 305.
The legislature has created a narrow exception to the principle that rate-making is a legislative prerogative by the procedures established in §§ 27-13-71 and 27-13-81. Under § 27-13-71, an insured dissatisfied with a rate may apply to the insurer for a rate reduction and then to the commissioner if the insured does not receive a reduction from the insurer. Under § 27-13-81, the insured may, thereafter, obtain judicial review of the commissioner’s decision first by means of a writ of certiorari to the Montgomery Circuit Court and then by means of an appeal to the Court of Civil Appeals. Through these procedures, the legislature has created a limited means by which courts may review the commissioner’s rate-making decisions. Sections 27-13-71 and 27-13-81 authorize judicial review only in this context. Peacock’s construction of “may” as that word is used in § 27-13-71 would sanction an unbridled expansion of this exception inconsistent with the general rule that the judicial branch lacks authority to set rates. We decline to ascribe such intent to the legislature based solely on the use of the word “may” in the context here presented. Consistent with the authority granted the commissioner by the legislature and the limited judicial review of the commissioner’s decisions, we conclude that the insured must exhaust his or her administrative remedies before the commissioner before turning to the courts for relief.
IV. Peacock’s Complaint
Peacock contends that his claims against Cincinnati do not fall within the commissioner’s administrative authority. Specifically, Peacock argues that he does not challenge Cincinnati’s rates or rating systems but, instead, its “business practice” of requiring insureds whose policy covers more than three vehicles to choose UM coverage for either all or none of them vehicles, even for, e.g., four, five, and six vehicles. To determine the nature of Peacock’s claims and whether those claims fall within the commissioner’s exclusive authority, we will consider the language of Peacock’s complaint.
The first sentence of Peacock’s complaint states: “This action challenges [Cincinnati’s] systematic and ongoing practice of improperly imposing and collecting premiums for certain [UM] insurance coverage when issuing multi-vehicle auto insurance policies in the State of Alabama.” (Emphasis added.) Peacock also alleges repeatedly that Cincinnati “overcharges] for UM coverage” and “charg[es] more than is necessary to provide maximum UM coverage under the contract.” (Emphasis added.) Peacock contends that Cincinnati receives “improper gains ... at the expense of insureds and premium pay-ors.” As noted above, Peacock seeks damages only in the form of restitution of premiums paid for the allegedly illusory UM coverage.
Regarding the class allegations of the complaint, Peacock defines his putative class as Alabama citizens who have “paid to [Cincinnati] monies for additional UM coverage.” Peacock states the first three class-wide common questions as:
“a. Whether [Cincinnati] has engaged in a widespread and systematic *309 practice of imposing and collecting premiums for certain unnecessary, improper, and illusory UM coverage when issuing multi-vehicle policies in Alabama;
“b. Whether [Cincinnati] has breached contracts with [Peacock] and class members by requiring and collecting for additional UM coverage for which there was no consideration flowing from [Cincinnati], as the required additional coverage was illusory and of no additional benefit;
“c. Whether [Cincinnati’s] practice of requiring (and collecting for) additional UM coverage as described herein is improper.”
(Emphasis added.)
Peacock contends that he challenges Cincinnati’s UM practices as violating § 32-7-23. However, the language of Peacock’s complaint, including the class allegations, shows a direct challenge to the premiums and rates Cincinnati applies to UM coverage pursuant to rates approved by the commissioner. Specifically, by alleging that Cincinnati “overcharges” for UM coverage, Peacock claims that Cincinnati’s rates are excessive — a matter squarely within the exclusive jurisdiction of the commissioner. See, e.g., §§ 27-13-65 and 27-13-68.
V. The Filedr-Rate Doctrine and Exhaustion of Administrative Remedies Applied
Peacock in essence contends either a) that the commissioner simply should not have approved Cincinnati’s forms and rating plans to the extent those forms and plans permitted Cincinnati to charge and collect premiums for UM coverage on vehicles in excess of three listed in a Cincinnati policy or b) that Peacock and others are entitled to a premium reduction (presumably with an accompanying refund of paid premiums) for UM coverage on listed vehicles exceeding three in a policy. Under the first alternative, which deals with the commissioner’s approval, the flled-rate doctrine precludes judicial review, depriving the trial court of subject-matter jurisdiction. See Birmingham Hockey Club, supra.
Peacock contends that the filed-rate doctrine does not apply to his claims based on this Court’s statement in QCC, Inc. v. Hall, 757 So.2d 1115, 1118 (Ala.2000), that the flled-rate doctrine “holds consumers to a conclusive presumption of knowledge of the contents of the tariff that the utility with which the consumer does business has filed with the appropriate regulatory agency.” Peacock contends that Cincinnati’s rates, approved by the commissioner, do not provide sufficient notice of its practice of requiring insureds to choose UM coverage as to all or none of their vehicles. Thus, Peacock reasons, the filed-rate doctrine does not hold him to a conclusive knowledge of Cincinnati’s business practices. To support this argument, Peacock relies on the now transcribed deposition testimony of Department employee Myra Frick.
As an initial matter, we note that although counsel for the parties discussed Frick’s deposition at the August 19, 2009, hearing, the transcript on which Peacock now relies was not before the trial court when it ruled on Cincinnati’s motion to dismiss. “[E]vidence not presented to the trial court will not be considered in a mandamus proceeding.” Ex parte Volvo Trucks North America, Inc., 954 So.2d 583, 587 (Ala.2006).
Additionally, Peacock’s argument is misdirected. The filed-rate doctrine, as applied in this case, involves not a presumption of knowledge on Peacock’s part, but a limitation on judicial review of rates approved by the commissioner. See Bir *310 mingham Hockey Club, supra. It is undisputed that Cincinnati’s rates and policy forms were approved by the commissioner.[4] Frick’s affidavit, submitted to the trial court by Cincinnati in support of its motion to dismiss, shows that the commissioner approved forms showing that Cincinnati applied rates and charged premiums for UM coverage as to all vehicles under multi-vehicle policies. As a result, Cincinnati’s UM rates are “per se reasonable and [are] unassailable in judicial proceedings.” Birmingham Hockey Club, 827 So.2d at 78 n. 4.
Regarding Peacock’s second alternative contention, which deals with premium reduction, the necessary predicate for judicial review is invocation of the remedy provided by § 27-13-71. The administrative remedy has been exhausted only upon an adverse determination and then, and only then, is the aggrieved party entitled to access to the courts by petition for a writ of certiorari filed in the Montgomery Circuit Court pursuant to § 27-13-71.
Peacock argues as an exception to the general rule of exhaustion of administrative remedies that exhausting his remedies before the commissioner and the Department would be futile. Citing Budget Inn of Daphne, Inc. v. City of Daphne, 789 So.2d 154, 157 (Ala.2000) (“[W]e recognize certain exceptions exist to the general rule of exhaustion of administrative remedies: ‘The doctrine does not apply when (1) the question raised is one of interpretation of a statute, (2) the action raises only questions of law and not matters requiring administrative discretion or an administrative finding of fact, (3) the exhaustion of administrative remedies would be futile and/or the available remedy is inadequate, or (4) where there is the threat of irrepai'able injury.’ Ex parte Lake Forest Property Owners’ Ass’n, 603 So.2d 1045, 1046-47 (Ala.1992).”). To support this argument, Peacock again relies on the now transcribed deposition testimony of Myra Frick. Based on her testimony, Peacock contends that the Department has already decided the issue his claims present.
As noted above, in a mandamus proceeding, this Court will not consider evidence not presented to the trial court. Volvo Trucks, supra. Additionally, we disagree with Peacock’s premise that review of his claims by the commissioner would be futile. Section 27-13-68 grants the commissioner the authority to alter previously approved rates if the commissioner determines that those rates are excessive. Furthermore, § 27-13-71 grants insureds affected by an approved rate a means of obtaining a rate reduction. Even if, as Peacock says, the Department has already decided the issue of the reasonableness of Cincinnati’s rates for UM coverage, given the commissioner’s statutory authority to permit a reduction in approved rates, we cannot say that administrative review is futile.
Under the facts before us, under either of Peacock’s alternative contentions the Tallapoosa Circuit Court exceeded its discretion when it denied Cincinnati’s motion to dismiss.[5]

*311
Conclusion

Based on the foregoing, we conclude that, alternatively, the filed-rate doctrine requires dismissal, as does Peacock’s failure to exhaust administrative remedies with the commissioner and the Department before seeking redress from the courts. Our decision precludes discussion of Cincinnati’s arguments regarding the trial court’s granting of Peacock’s motion to compel discovery. We grant Cincinnati’s petition for a writ of mandamus, and we direct the trial court to vacate its August 26, 2009, order. We further direct the trial court to dismiss Peacock’s action for failure to exhaust administrative remedies.[6]
PETITION GRANTED; WRIT ISSUED.
COBB, C.J., and WOODALL, STUART, SMITH, BOLIN, and SHAW, JJ.; concur.
PARKER, J., recuses himself.

. The question whether the coverage provided is indeed illusory is not before us; we note *303 the contention of the insurers in amici curiae briefs that the ownership of more than three vehicles increases the risk of a claim for UM benefits for which the insureds are entitled to be compensated.

. Peacock phrases his argument in terms of § 27-13-32, Ala.Code 1975; however, that section does not apply to UM insurance. We will address our discussion of this argument instead to § 27-13-71, the comparable section dealing with casualty insurance.

. We note in fairness that Judge Murdock did not contend in his dissenting opinion in Tin-dle that the legislature should have used the word "shall” in order to support the result reached by the majority in Tindle.

. Peacock has not raised any argument, either in the trial court or in this Court, that Cincinnati is charging premiums or applying rates in excess of those approved by the commissioner.

. We need not deal with the implications of cases observing that exhaustion of administrative remedies does not implicate subject-matter jurisdiction, see, e.g., Patterson v. Gladwin Corp., 835 So.2d 137, 142 (Ala.2002); Budget Inn of Daphne, 789 So.2d at 157, because we have recognized the propriety of seeking relief by mandamus for the denial of a motion to dismiss based on a failure to exhaust administrative remedies. See Blue Cross, 582 So.2d at 472-73.

. We note that Peacock, in his answer, relies on an amended complaint that was served after the entry of the trial court’s August 26, 2009, order and after Cincinnati filed its petition for a writ of mandamus in this Court. Accordingly, the amended complaint is not before us for consideration, and, in view of our issuance of the writ, we do not consider it. Whether the amended complaint may be the subject of a separate action is a matter not before us.