MAIN, Justice.
Ashley Rich, district attorney of Mobile County, and the State of Alabama (“the State”) have filed separate petitions for a writ of mandamus directed to the Montgomery Circuit Court in an inverse-condemnation action filed by Jesse Griffin and others (“Griffin”) in the Montgomery Circuit Court (“the Montgomery action”). Griffin filed the Montgomery action seeking compensation for property, namely electronic “bingo” machines and related equipment and money, previously confiscated by the State from Griffin’s facility in Mobile County.[2] Citing Tyson v. Macon County Greyhound Park, Inc., 43 So.3d 587 (Ala.2010), Rich and the State each argue that the Montgomery Circuit Court is without subject-matter jurisdiction to interfere with the executive branch’s enforcement of the criminal law. The State further argues that the Montgomery Circuit Court is without subject-matter jurisdiction based on principles of sovereign immunity. We consolidated the petitions for the purpose of writing one opinion. We grant the petitions and issue the writs.

Factual Background, and Procedural History

On February 25, 2010, Griffin opened and operated a facility in Chickasaw, in Mobile County, containing 25 electronic devices Griffin promoted as lawful charitable bingo machines. That same day, members of the Governor’s Task Force on Illegal Gambling (“the Task Force”), established by then Governor Bob Riley, seized the 25 machines, as well as other items, from the facility.[3] The machines *221 were transported to a state warehouse in Montgomery County to be stored temporarily.
On March 1, 2010, Griffin filed her inverse-condemnation action in the Montgomery Circuit Court, seeking compensation for the machines and other property she says was confiscated in Mobile County pursuant to the seizure by the Task Force. At some point after Griffin filed the Montgomery action, the machines were transported by the executive branch back to Mobile County to be stored at a facility there. On March 18, 2010, the Mobile County district attorney filed a forfeiture action in the Mobile Circuit Court (“the Mobile action”). The defending parties in the Montgomery action and in the Mobile action sought dismissal or transfer of the plaintiffs’ respective claims for lack of jurisdiction, asserting in each case that the complaint in their respective action was superior to the complaint in the other.
At a status conference held in the Montgomery action, the deputy legal advisor for the Governor of Alabama, the special prosecutor then in charge of the Task Force, and an assistant district attorney from the Mobile County district attorney’s office who was also assigned to the Task Force presented argument that the Montgomery action was due to be transferred to the Mobile Circuit Court or dismissed for lack of jurisdiction, and Griffin’s counsel argued to the contrary.
After receiving supplemental briefs from the parties and a number of motions from Griffin, the Montgomery Circuit Court conducted a hearing on March 14, 2011. At that hearing, the Montgomery Circuit Court, after confirming with the governor’s representative at the hearing that the electronic-bingo machines had been brought to Montgomery County after they were removed from Griffin’s facility by the Task Force and then had been transported back to Mobile County, began instructing the defendants in the Montgomery action to bring the machines back to Montgomery County for further proceedings, notably for an evidentiary hearing to test the legality of the machines. The following exchange occurred:
“MR. REAGAN [deputy attorney general representing the defendants in the Montgomery action]: Your Honor, if I may speak to that. We believe that the Court here lacks subject matter jurisdiction.
“THE COURT: And /all can’t defeat my jurisdiction by taking matters outside of what’s rightly before the Court. See, this matter is rightly, before the Court. You should have gotten my permission, all right, to have the machines moved back to Mobile County. Because at the time [Griffin] filed the lawsuit, I had jurisdiction over the—
“MR. REAGAN: Your Honor, we believe that—
“THE COURT: Now, you can believe it or not. Now, I can show you better than I can tell you.
“MR. REAGAN: I understand, Your Honor. The — may I ask Your Honor if, do you intend to have an evidentiary hearing?
“THE COURT: When the machines get back up here. When they’re going to get back up here? I’ll give y’all ten days to get them back up here.
“MR. REAGAN: But, Your Honor, we believe you don’t have subject matter jurisdiction to have—
“THE COURT: I had it and you can’t defeat it.
“MR. NEIMAN [deputy attorney general representing the defendants in *222 the Montgomery action]: Your Honor, to be clear. Our subject matter jurisdiction argument doesn’t depend on where the machines were—
“THE COURT: But I’m — I’m not going to even — if I don’t have subject matter jurisdiction, I can’t even rule on your motion, can I?
“MR. NEIMAN: Well, you can rule on our motion to dismiss for lack of subject matter jurisdiction.
“THE COURT: No. Get the machines back up here and I’ll hear your motion.
“MR. NEIMAN: But — I mean, the problem, Your Honor, is that the supreme court in the Tyson v. Macon County Greyhound, Park [, 43 So.3d 587 (Ala.2010),] case held that a court cannot exercise civil jurisdiction to issue the sort of declaratory—
“THE COURT: But you brought— no, no, no. You brought the machines up here.
“MR. NEIMAN: But—
“THE COURT: Now, if you had left — listen to me, now.
“MR. NEIMAN: Yes, Your Honor.
“THE COURT: If you had left them in Mobile County and you filed this lawsuit, I would have agreed with you, but you brought them up here, brought them into this jurisdiction. And you could not take them out like you did. Okay?
“MR. JONES [Griffin’s counsel]: Your Honor, can I make one distinction in what he just said? [It] [i]s that [the] Macon County case was a preseizure case where the court said you cannot issue an injunction to keep somebody from seizing something. That’s why we went ahead and opened it and let them seize them so that you could have jurisdiction.
“THE COURT: Well, y’all brought them up here to the jurisdiction.
“MS. TIERNEY [Mobile County deputy district attorney]: Judge, I’d like to say something on the jurisdiction if I may.
“THE COURT: No. We’re not going to say anything about jurisdiction until y’all get the machines back up here.
“MS. TIERNEY: But the Court of Mobile County has jurisdiction of those games.
“THE COURT: No, ma’am.
“MS. TIERNEY: Under our—
“THE COURT: I’ll hold one, two, three in contempt this morning. And if you think I’m playing, you need to ask somebody. Now, do you want me to have a contempt proceeding, or do y’all want to get the machines back up here?
“Sheriff, get me — I need two more deputies.
“MR. NEIMAN: We have no desire to be held in contempt and we will follow whatever order the Court issues here. I — I make that clear. Your Honor.
“THE COURT: Well, I need one more deputy. I think you can handle one and leave the female for her.
“MR. REAGAN: Your Honor, I have no intentions of violating any order you issue whatsoever.
“MS. TIERNEY: I do not intend to violate any court orders, Judge.
“THE COURT: All right. Now, y’all get the machines back up here. I’ll entertain your argument.
“MR. REAGAN: Thank you, Your Honor.
“THE COURT: I’m not going to let anybody — you can tell the Governor, the chief justice, district attorney for Mobile County — I’m not going to let anybody run roughshod over me.
*223 “MR. NEIMAN: That’s never been anyone’s intent in this case, Your Honor. I feel comfortable making that representation to the Court.
“THE COURT: And I do think I’ve got the authority to hold the Governor in contempt if we need to go there. Now, get the machines back up here. How many is it?
“MR. JONES: It’s twenty-five. For the purposes of demonstration here, I think we only need three.
“THE COURT: Well, I need the machines back up here. I’ll make whatever rulings I need to make on the matter. And it may include the case going back down to Mobile. Okay? There’s such a thing called rule of law.”
(Rich’s petition, Ex. 15, pp. 11-15.) Later in the hearing the circuit court instructed Griffin’s counsel not to “quibble over semantics,” in response to which Griffin’s counsel apologized to the court and stated: “Too many deputies in here for me not to apologize.” (Rich’s petition, Ex. 15, pp. 18, 19.) The Mobile County deputy district attorney then asked to be allowed to explain for the record that the only reason the electronic-bingo machines had been brought to Montgomery County was that the seizure of the machines occurred late at night and the closest available warehouse in which to temporarily store the machines was in Montgomery County. She and the circuit court then discussed the fact that Griffin had filed the Montgomery action while the machines were in Montgomery, and the following exchange occurred:
“THE COURT: Hold on.
“MS. TIERNEY: Yes, sir.
“THE COURT: You think the Mobile [district attorney] will come and get you out of jail?
“MS. TIERNEY: Well, I don’t expect to go to jail, Judge. I will obey your orders—
“THE COURT: Well, if you keep on, now. You might be surprised.
“MR. NEIMAN: Your Honor, I — the only — the only point—
“THE COURT: Listen. The only thing I’m saying is, let’s get the machines back up here. I’ll hear your arguments.
“MR. NEIMAN: Understood, Your Honor.
“THE COURT: I may agree with your argument. I may not agree, but I want the machines up here.
“MR. NEIMAN: We just want you to understand nobody has been trying to run roughshod over anybody.
“THE COURT: Well, I feel like y’all been doing that over me, though.
“MR. NEIMAN: Well, that’s — that’s not been anybody’s intent, Your Honor. And I just want to assure the Court of that.
“MS. TIERNEY: And so far, Judge, we’ve complied with all your orders.
“MR. NEIMAN: And we’ll continue to do so. Thank you.
“THE COURT: That’s why you’re not in jail.
“MS. TIERNEY: Thank you, sir.
“THE COURT: As long as you do that — as long as you do that, you’ll be all right. But just get them back here. Y’all may have to take them back to Mobile. I don’t know, but I don’t like the fact that nobody has asked me whether or not the machines should go back to Mobile.”
(Rich’s petition, Ex. 15, pp. 20-22.) After additional discussion, the following exchange occurred:
“THE COURT: And I just don’t like the fact what y’all did. I don’t know if it *224 was you. Y’all look like a new set of lawyers.
“MR. JONES: They are.
“THE COURT: Okay.
“MR. REAGAN: Judge, we’re from the Attorney General’s office and we’ve been asked by Governor Bentley to represent him in this matter.
“THE COURT: All right. But I’m just saying I had another set down here that I pretty much shaped and molded, you know. And they wouldn’t dare do anything without asking the judge.
“MR. REAGAN: Yes, Your Honor.
“THE COURT: So I guess are — y’all private lawyers or—
“MR. REAGAN: No, sir. We’re both assistant attorney generals.
“THE COURT: All right. Up there with Mr. [Luther] Strange [the attorney general].
“MR. REAGAN: Yes.
“MR. NEIMAN: That’s correct.
“THE COURT: Okay. All right. Well, y’all got to get — you know — what y’all do before this?
“MR. REAGAN: I was Governor Riley’s legal advisor. Your Honor.
“THE COURT: Well, you know how I am.
“MR. REAGAN: I do. I do. Judge.
“(Off-the-record discussion held.)
“MR. NEIMAN: I was in the private practice in Birmingham, Your Honor.
“THE COURT: Oh, no wonder.
“MR. JONES: Bradley, Arant.
“THE COURT: Got a Birmingham and Mobile lawyer.”
(Rich’s petition, Ex. 15, pp. 23-24.) The Montgomery Circuit Court again orally instructed the defendants to bring the machines back to Montgomery County within 10 days, and the hearing adjourned. The Montgomery Circuit Court scheduled another hearing for March 28, 2011.
Rich filed a petition for a writ of mandamus with this Court, which this Court dismissed on the basis that the Montgomery Circuit Court had not entered an order directing that the machines be brought to Montgomery County. Ex parte Rich (In re Griffin v. Bentley) (No. 1100702, May 18, 2011). On June 7, 2011, the Montgomery Circuit Court entered a written order, stating, in pertinent part:
“Accordingly, this Court hereby orders the Defendants to produce the electronic bingo machines, computer server, any monies seized, and all other seized property to this Court at the Montgomery County Courthouse within 10 days of this Order. This case is set for evi-dentiary hearing on the legality of the machines on Monday, July 11, 2011 at 9:00 a.m. in Courtroom 4A of the Montgomery County Courthouse.
“Further, [Griffin] and Defendants] and their respective expert witnesses shall have access to the machines and server during normal business hours of the Courthouse for preparation for trial.
“Further, [Griffin] is instructed to set up the machines in the Montgomery County Courthouse, at a location to be determined by the Court, to provide a live demonstration of the machines to the Court.
“Further, the cash seized and in the possession of the Defendants shall be deposited with the Circuit Clerk of Montgomery County and shall be held in the Clerk’s account pending final outcome of this matter.”
(Rich’s petition, Ex. 18.)
Rich and the State then filed the petitions for a writ of mandamus now before this Court. This Court issued an order staying the proceedings in the Montgomery action and ordered Griffin and the *225 Montgomery Circuit Court judge, as respondents, to file answers and briefs.[4]

Standard of Revieiv

“ ‘ “Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.” ’
“Ex parte Perfection Siding, Inc., 882 So.2d 307, 309-10 (Ala.2003) (quoting Ex parte Integon Corp., 672 So.2d 497, 499 (Ala.1995)). ‘The question of subject-matter jurisdiction is reviewable by a petition for a writ of mandamus.’ Ex parte Liberty Nat’l Life Ins. Co., 888 So.2d 478, 480 (Ala.2003).”
Ex parte Cincinnati Ins. Co., 51 So.3d 298, 302 (Ala.2010).

Analysis

In their respective mandamus petitions, Rich and the State each argue that the Montgomery Circuit Court is without subject-matter jurisdiction to interfere with the executive branch’s enforcement of the criminal law by civil action.[5] Thus, they argue that the Montgomery action is due to be dismissed.
In her answer to the petitions, Griffin asserts that Tyson is not controlling in this case because the facts are different and that the Montgomery Circuit Court has jurisdiction over her action. According to Griffin, the forfeiture action subsequently filed by the Mobile County district attorney in the Mobile Circuit Court was contrary to the dual-litigation statute, § 6-5-440, Ala.Code 1975, and to the compulsory-counterclaim rule, Rule 13(a), Ala.R.Civ.P.
As Deputy District Attorney Tier-ney and counsel for the State repeatedly attempted to argue to the Montgomery Circuit Court, “the trial court ‘lacks subject-matter jurisdiction to interfere with a criminal proceeding by civil action.’ ” Tyson, 43 So.3d at 591 (quoting an order entered by this Court in Barber v. Houston County Econ. Dev. Ass’n (No. 1090444, January 15, 2010)). Further, this Court implicitly recognized in Tyson that a forfeiture action filed pursuant to § 13A-12-30, Ala.Code 1975, was logically an extension of law enforcement’s efforts to enforce the criminal laws of the State of Alabama.
The seizure of the machines and other evidence by the Task Force took place in Mobile County pursuant to an investigation into illegal gambling in that county. The facility where the machines were operating was in Mobile County. That the machines were temporarily stored in Montgomery County after they were seized is immaterial in this case. Similarly, the fact that Griffin won a proverbial race to the courthouse steps to file her civil action in the Montgomery Circuit Court before the Mobile County district attorney brought the forfeiture action in the Mobile Circuit Court does not obliterate the fact that the search and seizure took place as part of a criminal investigation into illegal gambling in Mobile County-
The Montgomery action constituted an attempted interference with the criminal action in Mobile County by, including, but not limited to, ordering that the electronic-bingo machines and other evidence be brought back to Montgomery County so that the Montgomery Circuit Court could *226 hold a hearing to adjudicate the legality of the very machines made the subject of the criminal proceedings and by threatening the attorneys for the executive branch with arrest for contempt when they attempted to explain to the Montgomery Circuit Court that it was without subject-matter jurisdiction to order the return of the machines to Montgomery County.[6]

Conclusion

Based on the foregoing, we conclude that neither the fact that the electronic-bingo machines were brought to Montgomery County to be temporarily stored nor the fact that Griffin filed the Montgomery action before the Mobile County district attorney filed the Mobile action erases the fact that the events in this case arose from a criminal action initiated by the investigation of the facility and the resulting seizure of the machines and other evidence. Thus, Griffin’s reliance on the dual-litigation statute and the compulsory-counterclaim rule is misplaced. We grant Rich’s and the State’s petitions for a writ of mandamus, and we direct the Montgomery Circuit Court to vacate its June 7, 2011, order. We further direct the trial court to issue an order dismissing the Montgomery action for lack of subject-matter jurisdiction.
1101031 — PETITION GRANTED; WRIT ISSUED.
1101033 — PETITION GRANTED; WRIT ISSUED.
WOODALL, STUART, BOLIN, PARKER, MURDOCK, SHAW, and WISE, JJ., concur.
MALONE, C.J., recuses himself.

. Counsel for the State sought dismissal of the Montgomery action, asserting, among other grounds, that the property was subject to a condemnation action in the Mobile Circuit Court; although not a party to the Montgomery action, a Mobile County deputy district attorney appeared at the proceedings in the Montgomery action to argue for dismissal of the Montgomery action as well.

. A number of cases related to the legality of electronic gaming machines and “charitable electronic bingo” have been progressing though the court system in Alabama. For a detailed discussion of the recent history of that subject, including the Task Force, see Tyson v. Jones, 60 So.3d 831 (Ala.2010), and Ex parte State (In re Riley v. Cornerstone Com *221 munity Outreach, Inc.), 57 So.3d 704 (Ala.2010).

. Griffin filed an answer and brief; the Montgomery Circuit Court judge did not favor us with an answer or brief.

. Because of our disposition of this issue, we need not address the State's additional arguments regarding sovereign immunity.

. Further, the Montgomery Circuit Court did not need the machines or other evidence seized to ascertain whether it had subject-matter jurisdiction over the action filed in the Montgomery Circuit Court.