MAIN, Justice.
Alabama Mutual Insurance Corporation (“AMIC”), the defendant in an action pending in the Lamar Circuit Court' filed by the City of Vernon on behalf of itself and other similarly situated entities, appeals from the trial court’á order certifying a class in the underlying action. We remand the case to the trial court for further proceedings.
The class-certification order states, in pertinent part:
“Thé Plaintiff, the City of Vernon (‘Vernon’), is a municipal corporation located in Lamar County, Alabama. The Defendant, Alabama Municipal Insurance Company (‘AMIC’), is a mutual company licensed to do business throughout the State of Alabama. AMIC offers insurance to its members, ■which are local governmental entities, e.g., cities, towns, utilities, boards and other- municipal associations. AMIG’s insurance products include uninsured/underinsured motorist
(‘UM/UIM’) coverage.
“On January 5, 2010, Vernon filed the present lawsuit on behalf of itself and a class of similarly situated entities that had purchased UM/UIM insurance from AMIC. Count II of the lawsuit alleged breach of contract, for which Vernon sought damages and/or inj.unctive relief. Vernon contended that AMIC had breached its insurance contract by adding an exclusion that was contrary to established Alabama law. Vernon further contended that, following the amendment, AMIC’s UM/UIM coverage was illusory and AMIC continued to collect the full amount of the' UM/UIM premiums. AMIC does not dispute that Vernon had a provision! for UM/UIM insurance coverage in its contract with AMIC during the relevant period and paid a separate premium for UM/UIM coverage. AMIC can access and retrieve the amount of premium .payments made by all of its UM/UIM ..policyholders during the relevant period and individualized testimony as to claimed damages is not required.
“On July . 21, 2011, ,AMIC filed a motion for summary judgment. The Court entertained the briefs , of the parties and heard oral arguments on September 1, 2011. On September 2, 2011, the Court denied AMIC’s motion, finding that Vernon had established an issue of material fact with regard to Vernon’s contract claim.

"The Exphsion

■ “Evidence was introduced that on February ■ 14, 2005, Doranne Newton, underwriting manager for AMIC, sent a ■letter..to Vernon that stated AMIC was revising its Alabama Uninsured Motorist Coverage Form to exclude employees from collecting both Workers Compensation, which would be the employees’ sole remedy, and Uninsured Motorist benefits when they were involved in an automobile accident. A similar letter *352 ■ was sent to all of AMIC’s policyholders with UM/UIM coverage.
“The pertinent provision from the UM/UIM Endorsement states:
“ ‘C. Exclusions
“ ‘This insurance does not apply to:
“ ‘4. Bodily Injury to:
“‘(1). An Employee or volunteer of the insured arising out of and,in the course of:
“ ‘a. Employment by the Insured, or:
“ ‘b.; Volunteer services performed for or- on behalf of the insured[.]
“‘(2). The spouse, child, parent, brother, or sister of that Employee or volunteer as a consequence of (1) above.
“The Endorsement further states:
“ ‘D. Limit of Insurance
[[Image here]]
“ ‘2. ... We will not pay for' any element of “loss” if a person is entitled' to receive payment for the same element of “loss” under any workers’ compensation, disability benefits or similar law.’
“The evidence showed that AMIC maintained the position set out in its manager’s letter throughout the relevant period and, in addition to excluding the employees referenced by Ms. Newton, AMIC’s Endorsement also excluded volunteers and relatives. Vernon contends that, with the exclusion, AMIC essentially eliminated its UM/UIM exposure but did not eliminate Vernon’s premium for UM/UIM coverage.
' “Prior to amending the insurance pol- ■ icy, AMIC submitted- the proposed endorsement to the Department of Insurance. In a letter to the ° Insurance Commissioner, Steven Wells, the Presi- ■ dent of AMIC, stated the following reasons for seeking approval of the exclusion:
“ ‘AMIC’s experience with Uninsured Motorist coverage has been very negative. Also, every claim has been from a municipal employee who has already collected for their injury under Worker’s ' Compensation, which has a two fold effect. First, it allows the Employee to collect twice for the injury since medical payments expense under Worker’s Compensation is hot deducted from the claim. ’ Secondarily, the Municipality is providing benefits for employees who operate ' motor vehicles that are not available to its other employees.’
“After AMIC paid a $40.00 filing fee, the Commissioner approved the proposed exclusion. AMIC relied on the Commissioner’s approval of the exclusion. Mr. Wells testified that AMIC did, not seek or request a legal opinion from its own or outside counsel.
“Mr. Wells testified that the 2005 policy exclusion did not comply with the law of Alabama. In 2003, the Alabama Supreme Court specifically addressed an exclusion that was essentially identical to the exclusion .that AMIC added in 2005. In Watts v. Sentry Ins., 876 So.2d 440, 442 (Ala.2003), the Court stated:
“ ‘The -issue this case presents is whether an employee who is receiving workers’ compensation benefits from his employer for injuries he sustained ■nr a motor-vehicle accident that occurred while the employee was driving a vehicle belonging to the employer can recover underinsured-motorist benefits from the employer’s automobile liability insurer (which is not the employer’s workers’ compensation insurer), if the employee’s injuries were proximately caused by the negligence *353 or wantonness of an underinsured driver, who was not a co-employee?
“‘The answer to that question is yes, subject to the employer’s right to reimbursement for the compensation paid on account of the employee’s injury to the extent of the employee’s recovery of damages against the third party tortfeasor. Ala.Code 1975, § 32-7-23 and § 25-5-11.’
“Vernon claims that the addition of the 2005 Endorsement rendered Vernon’s UM/UIM coverage illusory and breached AMIC’s contract to provide UM/UIM insurance. Coverage is illusory ‘[w]hen limitations or exclusions completely contradict the insuring provisions,’ and such ‘coverage’ is not countenanced in this State. Shrader v. Employers Mut. Gas. Co., 907 So.2d 1026, 1033 (Ala.2005) (citation omitted). Other courts have responded similarly. See, e.g., Lincoln Nat’l Health & Cas. Ins. Co. v. Brown, 782 F.Supp. 110, 112-13 (M.D.Ga.1992) (stating that an insurance policy that provides coverage for specifically enumerated torts, but only if they are committed unintentionally, is .‘complete nonsense’). Vernon claims it contracted for UM/UIM insurance and paid premiums for UM/UIM coverage but received, no actual UM/ UIM coverage because AMIC excluded the only individuals who had a realistic possibility to collect UM/UIM benefits — municipal employees and volunteers.

“Class and Damages

“On June 10, 2010, approximately six months after- Vernon' filed this- lawsuit, AMIC amended its policy to remove the exclusion and the issue of injunctive relief is moot.
‘Vernon seeks to serve as class representative of policyholders that purchased UM/UIM coverage from AMIC while the exclusion 'was in place. The class period runs from July 31, 2004, the effective date of the filing of the exclusion with the Alabama' Department of Insurance, to June 10, 2010, the effective date of its removal.1 The putative class consists of municipal 'entities, all located in Alabama, including but not limited to, cities, towns, utilities, boards and other municipal associations that purchased UM/UIM insurance from AMIC during the class period.
“Vernon is seeking contract damages from AMIC. ‘As a general rule, damages in a breach of contract action are that sum which would place the injured party in the same condition he would have occupied if the contract had not been breached.’. Ex parte Steadman, 812 So.2d 290, 295 (Ala.2001), quoting Brendle Fire Equip., Inc. v. Electronic Eng’rs, Inc., 454 So.2d 1032, 1034 (Ala.Civ.App.1984). Rebecca Cantrell, Clerk for the City of Vernon, testified that Vernon paid the full amount of premiums due to AMIC for UM/UIM coverage for the applicable policy years. Exhibits show that Vernon paid a total of $14,258.78 in premiums for UM/UIM coverage during the relevant period which Vernon claims as damages..
“With regard to the claim of damages by other policyholders, Steven Wells testified that AMIC has records of the premium payments- made by all of its UM/UIM policyholders during the relevant period and that AMIC can access this ■ information without- difficulty. AMIC submitted evidence to show that its removal of the exclusion was retroactive to November 1, 2009; and Mr. Wells testified that the company had paid all legitimate beneficiaries. However, Mr. Wells was not able to-identify any specific beneficiary who had been *354 paid, or state the amount of the payment, or indicate an exact number of beneficiaries who had been retroactively paid. In the absence of any specific evidence of retroactive payment, this Court finds-that the class period extends to June 10, .2010, the date the policyholders were notified that the exclusion had been removed.
“STANDARDS FOR CLASS CERTIF1- . CATION UNDER RULE 23, ALA. R. CIV. P.
“The rationale behind the concept of a class action as a procedural device is to conserve the resources of the courts and the parties by permitting an issue potentially affecting'every class member to be litigated in an economical fashion. Jenkins v. Raymark Industries, Inc., 782 F.2d 408, 471 (5th Cir.1986). The certification of a class action is generally left to the broad discretion of the trial court. Ex parte Gold Kist, Inc., 646 So.2d 1339 (Ala.1994), but only after the court has conducted' a rigorous analysis of the relevant material that has been submitted. See § 6 — 5—641(e), Ala.Code 1975. The decision to grant class certification is not final in its nature and, depending upon evidence produced at a later date, the certification may be -rescinded and/or amended as the facts dictate; Rule 23(c)(1), Ala. R. Civ. P.; see First [Alabama] Bank of Montgomery, N.A. v. Martin, 381 So.2d 32, 33-34 (Ala.1980).
“Federal authority is persuasive in applying Rule 23 of the Alabama Rules of Civil Procedure, due to its similarity to Rule '23 of the Federal Rules of Civil Procedure. See Mitchell v. H & R Block, Inc., 783 So.2d 812, 816 (Ala.2000); Shoney’s, Inc. v. Barnett, 773 So.2d 1015, 1029 (Ala.Civ.App.1999). In order to determine whether an action is maintainable as a class action under Rule 23, Ala. R. Civ. P., this. Court must
. engage in a two-step process. First, the Court must determine whether the plaintiff has met the burden of showing numerosity, commonality, typicality, and adequacy of representation, as required under Rule 23(a). Next, the,Court must determine whether the Plaintiff has satisfied the requirements of at least one subpart of Rule 23(b). Reynolds Metals Co. v. Hill, 825 So.2d 100, 103 (Ala.2002); Compass Bank v. Snow, 823 So.2d 667, 671 (Ala.2001).
[[Image here]]
“Rule 23(a) Adequacy Requirement
“The test for adequacy of representation has two aspects; (1) whether the named plaintiff has interests antagonistic to those of the rest of the class; and (2) whether plaintiffs counsel are qualified, experienced, and generally able to conduct the proposed litigation. Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 726 (11th Cir.1987). The Alabama Supreme Court has. explained the ‘ade-quaey-of-representation’ requirement of Rule 23(a) as follows:
“ ‘The adequacy-of-representation requirement “is typically construed to foreclose the class action where there is a conflict of interest between the named plaintiff and the members of the putative class.” General Tel. Co. v. EEOC, 446 U.S. [318] at 331, 100 S.Ct. 1698 [ (1980) ], It also involves questions regarding whether the attorneys representing the class are “qualified, experienced, and generally able to conduct the proposed litigation.” Griffin v. Carlin, 755 F.2d 1516, 1533 (11th Cir.1985). Adequacy of representation requires that the class representative ‘“have common interests with unnamed members of the class’” and that the representative “ “will vigorously prosecute the *355 interests of the class through qualified counsel.’” [In re] American Med Sys., 75 F.3d [1069] at 1088 [(6th Cir.1996) ] (quoting Senter v. General Motors Coup., 532 F.2d 511, 525 (6th Cir.1976)); see also General Tel. Co. [of the Sonthivest ] v. Falcon, 457 U.S. [147] at 157, 102 S.Ct. 2364 [ (1982) ].’
“Cutler v. Orkin Exterminating Co., Inc., 770 So.2d 67, 71 (Ala.2000).
“Adequacy of both the named plaintiff and counsel is clearly met here. There is no evidence that Vernon has any interest adverse to the class that makes.it inadequate as class representative. The Court is familiar with. counsel for Vernon and finds them adequate to serve as counsel for > the class. Counsel are knowledgeable and possess extensive experience . in litigation, they have effectively and efficiently litigated the case to this point, and they have sufficient resources and expertise to -see it through to completion. AMIC has. not raised any issue with regard to either aspect, of the adequacy requirement.. The Court finds that the adequacy requirement of Rule 23(a) has been satisfied.”
After the parties had filed their briefs in this case, Vernon filed a motion with this Court to allow it to voluntarily dismiss its individual claims and to withdraw as class representative. Vernon stated that it had reached an agreement with AMIC regarding its individual claims and therefore no longer wishes to pursue those claims.
AMIC filed a response to Vernon’s motion in which it argued that this Court should remand this ease to the trial court with instructions to dismiss it. Without a named representative, AMIC argued, the requirements for a class action cannot be met.
Vernon responded, arguing that it has the right to withdraw from the pending litigation, but, it argues, the trial court has certified the class and the litigation remains viable. ■ Vernon requests a reasonable time in which to allow the class to name a new representative,
The trial court should have the opportunity to determine whether a new named plaintiff should be certified. The .trial court is the proper entity to decide whether to allow the class members to amend their complaint to substitute a new named plaintiff and to determine whether that plaintiff meets the adequacy requirements in Rule 23(a), Ala. R, Civ. P., so as to represent the class. In Corbitt v. Mangum, 523 So.2d 348, 351 (Ala.1988), this Court held:
“[I]t is well settled that *[w]hen the ... court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by [the named representative].’ Franks v. Bowman Transportation Co., 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976) (citing Sosna v. Iowa, 419 U.S., 393, 399, 96 S.Ct. 553, 557, 42 L.Ed.2d 532 (1975)). Consequently, the plaintiffs’ class in the instant case had a legal status and interest separate from the interest , asserted by Audrey Pink-ston, and the claims of the class were not extinguished because her claim subsequently failed.”
The above reasoning in a case in which the named plaintiffs claims were unsuccessful also applies to this case, in which the named plaintiff settled its claims with AMIC. If a new class representative is in place, we can proceed to-review the merits of the order certifying the class.
We remand this case to the trial court for further proceedings consistent with this opinion'. The trial court shall make a *356 return to remand within 120 days of the date on which this opinion is released.
REMANDED WITH DIRECTIONS.
MOORE, C.J., and BOLIN, MURDOCK, and BRYAN, JJ., concur.

On Return to Remand

MAIN, Justice.
This is the second time this matter has been before this Court. In Alabama Mutual Insurance Corp. v. City of Vernon, 178 So.3d 350 (Ala.2013), Alabama Mutual Insurance Corporation (“AMIC”) appealed from the trial court’s order certifying a class in the action filed by the City of Vernon (“Vernon”) and a class of similarly situated entities that had purchased uninsured-motorist/underinsúred-motorist coverage (“UM/UIM coverage”) from AMIC.[1] Vernon was the original class representative; its claims were straightforward. Vernon claimed that, in 2005, AMIC “ ‘revisfed] its Alabama Uninsured Motorist Coverage Form to exclude employees from collecting both Workers Compensation, which would be the employees’ sole remedy, and Uninsured Motorist benefits when they were involved in an automobile accident.’ Alabama Mut. Ins. Corp., 178 So.3d at 351 (quoting the trial court’s class-certification order). AMIC’s revision of its UM/UIM" coverage form, Vernon argued, “ ‘rendered Vernon’s UM/UIM covérage illusory[2] and breached AMIC’s contract to provide UM/UIM insurance’” because, according to Vernon, “ ‘it contracted for UM/UIM insurance and paid premiums for UM/UIM coverage but received no actual UM/UIM coverage because AMIC excluded the only individuals who had a realistic possibility to collect UM/UIM benefits — municipal employees and volunteers.’ ” 178 So.3d at 353 (quoting the trial court’s class-certification order).
As noted, Vernon was the original class representative; however, after AMIC filed its notice of appeal from the trial court’s class-certification order, Vernon settled its claims against AMIC and withdrew as the class representative. Because there was no longer a representative to “fairly and adequately protect the interests of the class,” Rule 23(a), Aa. R. Civ. P., this Court remanded the cause to the trial court, allowing 120 days for a new class representative to be substituted for Vernon. Alabama Mut. Ins. Corp., 178 So.3d at 356. On remand, the trial court timely entered an order substituting the City of Fairfield (“Fairfield”) for Vernon as the class representative.
This Court allowed the parties to submit supplemental briefs on return to remand. Upon review of the parties’ arguments in those briefs, it has become clear to this Court that there exists a fatal jurisdictional defect in this case. Specifically, the trial court is without subject-matter jurisdiction over this dispute; initial jurisdiction over this dispute properly lies with the Aabama Department of Insurance and its commissioner. As explained more fully below, we must vacate the trial court’s judgment certifying the class and dismiss this appeal for lack of subject-matter jurisdiction.
This Court’s decision in Ex parte Cincinnati Insurance Co., 51 So.3d 298 (Ala.2010), is highly instructive and on point *357 with the matter now- before us. In Ex parte Cincinnati Insurance Co., Ray Peacock filed a putative class action against Cincinnati Insurance Company (“Cincinnati”), alleging:
“[B]ecause an insured may stack a maximum of three UM coverages per -loss, both by statute and by the terms of Cincinnati’s standard policy forms, UM coverage for more than three vehicles under a multi-vehicle policy — e.g., UM coverage for four, five, or six vehicles— is ‘unnecessary, illusory, .and provides no benefit to the purchaser of the policy.’ Peacock alleged that Cincinnati ‘engages in a wide-spread and ongoing practice of imposing premiums for additional UM coverages on additional vehicles (i.e., .beyond three (3)) when issuing multi-vehi-cle policies in Alabama, despite the fact that an insured could never utilize the additional UM coverages.’ (Emphasis in original.) ‘Thus,’ Peacock alleged, Cincinnati ‘overcharges for UM coverage it knows it will never have to provide.’ ”
51 So.3d at 300-01. Peacock’s complaint sought damages for himself and the putative class in the form of “‘restitution or disgorgement of monies paid for the [allegedly] unnecessary and illusory UM coverage.’ ” Id. at 301 (quoting complaint).
Cincinnati moved to dismiss Peacock’s action for lack of subject-matter jurisdiction. Specifically, Cincinnati arguéd
“that the Commissioner of Insurance (‘the commissioner’) and the Alabama Department of Insurance (‘the Department’) have broad authority- over the matters made 'the subject of Peacock’s complaint; that Peacock -had failed to exhaust his administrative remedies; and that Peacock’s claims were barred by the filed-rate doctrine.”
Ex parte Cincinnati, 51 So.3d at 301. Cincinnati supported its motion with the affidavit of -Myra Frick, ■ a rate manager with the Department. In her affidavit, Frick stated, among other things* that the Department had approved Cincinnati’s rates for and the forms related to UM coverage. Frick further stated that, by approving Cincinnati’s rates and forms, the Department had determined that the rates and forms were not unreasonably high, inadequate, discriminatory, or misleading. Id. The trial court denied Cincinnati’s motion to dismiss. Cincinnati petitioned this Court for a writ of mandamus directing the trial court to vacate its order denying the motion to dismiss and to enter an order granting its motion to dismiss.
In its mandamus petition, Cincinnati argued that the trial court lacked subject-matter jurisdiction over Peacock’s claims based on both the “filed-rate doctrine” and on Peacock’s failure to pursue administrative remedies through the commissioner and the Department. In his answer, Peacock argued that the filed-rate doctrine did not apply to his claims and that he was not required to pursue administrative remedies. Peacock also argued that he was not challenging Cincinnati’s rate calculations or its premiums for UM coverage; rather, Peacock argued, he was challenging Cincinnati’s “business practice” of requiring insureds who desired multi-vehicle policies to accept UM coverage for either all or none of the insureds’ vehicles. In addressing the parties’ arguments, this Court first undertook an extensive examination of the applicable statutes and caselaw:
“I. The Statutory Authority of the Commissioner
[[Image here]]
“The Insurance Code grants the commissioner the authority to enforce the statutes and regulations governing insurance providers in Alabama. ' See § 27-2-7, Ala.Code 1975. Particularly, the commissioner, and under the commissioner’s authority, the Department, *358 has the authority to regulate insurance rates and forms. See, e,g., §§ 27-2-7, 27-2-8, 27-13-1 et seq., 27-14-8, and 27-14-9, Ala.Code 1975.
“UM insurance is a form of casualty ‘insurance and is, therefore, governed by Chapter 13, Article 3, of the Insurance Code. See §§ 27-5-6(a)(l) and 27-13-61, Ala.Code 1975. That article requires insurers to ‘make rates that are not unreasonably high-or inadequate for the safety and, soundness of the insurer and which do not unfairly discriminate between risks in this state_’ § 27-13-65, Ala.Code 1975. Insurers must submit all rates and rating plans to the Department before using or applying any rates. § 27-13-67, Ala.Code 1975. Section 27-13-68, Ala.Code 1975, grants the commissioner the authority and responsibility to examine the rates and the rating plans submitted to determine whether they comply with § 27-13-65. Under § 27-13-68, the commissioner has the authority to order that noneom-pliant rating plans be altered. Addition- • ally, § 27-13-68 grants the commissioner the authority to determine whether rating plans that have been previously approved‘provide for, result in or produce rates which are unreasonable or inadequate or which discriminate unfairly, between risks in this state’ and to order insurers to alter any rating plan the commissioner determines' does so.
“Once the commissioner approves a rate or rating plan, the Insurance Code prohibits the insurer from deviating from that plan. See § 27-13-67 (‘Prom and after the date of the filing of such rating plans, every insurer shall charge and receive rates fixed or determined in strict conformity-therewith, except as in this article otherwise expressly provided.’); § 27-13-76 (‘No insurer, or employee thereof, and no broker or agent shall knowingly charge, demand or receive a premium for any policy of insurance except in accordance with the respective rating systems on file with, and approved by, the commissioner.’). Insurers may alter rates and rate plans only with the approval of the commissioner in accordance with procedures established in § 27-13-76, Ala.Code 1975. Furthermore, the Insurance Code prohibits insurers from reducing premiums except in accordance with rating systems approved by the commissioner. § 27 — 12—14(a), Ala.Code 1975.
“The' Insurance Code alsd grants the commissioner authority to regulate the insurance contract; Particularly, § 12-14-8, Ala.Code 1975, requires that all insurance policies, application forms, contracts, printed riders, endorsement forms, and forms of renewal certificates be approved by the commissioner. Section 27-14-9, Ala.Code 1975, authorizes the commissioner to disapprove any such form if the form:'
“ ‘(1) Is in any respect in violation of, or does not comply with, [the Insurance Code];
“‘(2) Contains or incorporates by reference, where such incorporation is otherwise permissible, any inconsistent, ambiguous, or misleading clauses or exceptions and conditions which deceptively affect the risk purported to be assumed in the general coverage of the contract;
“‘; [or]
“ ‘(5) Contains -provisions which are unfair, or inequitable, or contrary to the public policy of this state or which would, because such provisions are unclear or deceptively worded, encourage misrepresentation.’
“Additionally, § 32-7-23(a), [Ala.Code ■ 1975,] the section of the Motor Vehicle Safety-Responsibility Act requiring in- *359 surera to offer UM coverage, requires that policy provisions relating to UM coverage be approved by the commissioner.
“Section 27-2-7(6) of the Insurance Code grants the commissioner broad investigative authority. That subsection provided]:
“ ‘The commissioner shall ... [cion-duct such examinations and investigations of insurance matters, in addition to examinations and investigations expressly authorized, as he or she' may deem proper to determine whether any person has violated any provision of this title or to secure information useful in the lawful, administration of any such provision....’ ■
“Regarding rates, Chapter 13, :Article 3, grants the commissioner even greater authority to inquire into and to examine the records and business practices of casualty insurers. Section 27-13-74, Ala.Code 1975, states:
“‘The commissioner may* whenever he deems it expedient, but at least once in every five years, make, or cause to be made, an examination of the business, affairs and method of operation of each rating organization doing business in this state and a like examination of each insurer making its own rates.... The officers, managers, agents, and employees of such rating organization or- insurer making its own rates shall exhibit all , its books, .records, documents, or agreements governing its method of operation, its rating systems and its accounts for the purpose of such examination. The commissioner, or his representative, may, for the purpose of facilitating and furthering such examination, examine, under oath, the officers, managers, agents, and- employees of such rating organization or insurer making its own rates.’ .

“The legislature, therefore, has granted the commissioner the authority not only to inquire into the rates applied and premiums charged by casualty insurers, but also to inquire into,, a casualty insurer’s 'business, .affairs and method of operation,’ Id.

' -'The Insurance Code also grants the commissioner the authority to hold hearings and provides for judicial review of the commissioner’s decisions. Generally,.the Insurance Code requires the commissioner to hold hearings upon urritten demand of any person aggrieved by an act, a threatened act, or a failure of the commissioner. See § 27-2-28(b), Ala.Code 1975. Once the commissioner has issued a decision, or if the commissioner, refuses to hold a hearing, the aggrieved party may appeal to the Montgomery Circuit Court. See § 27- . 2-32, Ala.Code 1975.
“Specifically regarding rates, the Department may require insurers to furnish ‘all pertinent information’ regarding a rate to persons affected by the rate. See § 27-13-70, Ala.Code 1975... Section 27-13-71, Ala.Code 1975, requires insurers to provide a means by which persons affected by a rate ‘may be heard on a written , application to reduce such rate.’ That section then-states:
“ ‘If such rating organization or such insurer shall refuse to reduce such rate, the person, or persons, affected thereby may make a like application to the- commissioner within 30 days after receipt of notice in writing that the application for reduction of rate has been denied by such rating organization or by such insurer— The commissioner shall fix a time and place for hearing on such application, upon not less than 10-days’ notice by *360 registered or certified mail, for' the applicant and such rating organization or such insurer to be heard. The commissioner shall make such order as he shall deem just and lawful upon the evidence placed before him at such hearing.’
“Section 27-13-81, Ala.Code 1975, then provides a means by which the commissioner’s decisions may be reviewed by the Montgomery Circuit Court and then by the Court of Civil Appeals.
“II. The Filed-Rate Doctrine
“The filed-rate doctrine limits judicial review of rates that have been approved by regulatory agencies. Describing the doctrine in a case involving an insurance rate approved by the commissioner, this Court has stated: ‘The filed-rate doctrine provides that once a filed rate is approved by the appropriate governing regulatory agency, it is per se- reasonable and is unassailable in judicial proceedings.’ Birmingham Hockey Club, Inc. v. National Council on Compensation Ins., Inc., 827 So.2d 73, 78 n. 4 (Ala.2002) (emphasis added). The bar of the filed-rate doctrine goes to the court’s jurisdiction over the subject matter. See Birmingham Hockey Club, 827 So.2d at 83 n. 11 (‘Because the filed-rate doctrine prohibits collateral challenges to rates properly approved by the insurance commissionér, any such challenge raised in the courts is due to be dismissed.’ (citing Allen v. State Farm Fire & Cas. Co., 59 F.Supp.2d 1217, 1227-29 (S.D.Ala.1999))). Accordingly, when an insured challenges the rates of an insurer that have been approved by the commissioner, the filed-rate doctrine' precludes judicial review.
“We note that, with regard to the statutory procedure for seeking a reduction in rates, § 27-13-71 provides a remedy for reduction from the filed rate if circumstances warrant. Therefore, proceedings under § 27-13-71 are distinguishable from an impermissible attack on the rate as filed, and such proceedings are not subject to the bar of the filed-rate doctrine. The extent to . which § 27-13-71 requires exhaustion of an administrative remedy is a separate question we address below.
“HI. Exhaustion of Administrative Remedies
“When the insured asserts the entitlement to a reduction from the filed rate, the Insurance pode provides an administrative remedy, followed by judicial re- . view commenced by a petition for the writ of certiorari filed in the Montgomery Circuit Court. See §§ 27-13-71 and 27-13-81. Based on the extensive statutory scheme established by the legisla- ' ture to regulate insurance, including the administrative remedies provided in §§ 27-13-71 and 27-13-81, the commissioner maintains that ‘insurance form and rate approval are only coghizable in the first instance by the Commissioner and the Department of Insurance, not the courts.’ Commissioner’s brief, at 16. According to the .commissioner, therefore, the Insurance Code vests exclusive jurisdiction over claims relating to insurance rates and forms in the commissioner. and the Department. Cincinnati agrees. •
“In enacting the Insurance Code; the legislature granted the commissioner ' wide-ranging authority to regulate insurers/ More specifically, the legislature has delegated to the commissioner and the Department its authority to regulate insurance rates. City of Birmingham v. Southern Bell Tel. & Tel. Co., 234 Ala. 526, 530, 176 So. 301, 303 (1937) (‘That rate making is a legislative and not a judicial function is well established.’ (emphasis added)). The authori *361 ty to regulate rates is comprehensive. Insurers are prohibited from imposing rates other than those approved by the commissioner. See §§ 27-13-67 and 27-13-76. The commissioner also has the authority to regulate insurance forms, including UM-policy provisions. See §§ 27-14-8, 27-14-9, and 32-7-23(a). The commissioner has the authority to investigate violations of the Insurance Code, including violations relating to insurance forms and rates. See § 27-2-7(6). Furthermore, Chapter 13, Article 3, of the Insurance Code grants the commissioner broad authority to examine the casualty insurers’ business, affairs, and methods of operation. . See § 27-13-74.
“Peacock, citing Tindle v. State Farm General Insurance Co., 826 So.2d 144 (Ala.Civ.App.2001) ..., contends that because § 27-13-71 provides that an insured ‘may’ be heard ;by the insurer and ‘may’ apply to the commissioner for a rate reduction, insureds are not required to seek administrative review before filing suit. In Tindle, the Court of Civil Appeals considered whether the trial court properly dismissed a putative class action against an insurer challenging the insurer’s calculation of premiums with respect to home insurance. The Court of Civil Appeals agreed that the insured was required to exhaust administrative remedies before seeking redress through the courts....
“Section 27-13-71 states that if, upon application by an insured, an insurer refuses to reduce the insured’s rate, the insured ‘may make a like application to the commissioner within 30 days.’ (Emphasis added.) Peacock contends the legislature’s use of the word ‘may,’ rather than the word ‘shall,’ indicates that the insured has the option of pursuing administrative remedies or pursuing remedies in court. If, however, the legislature had used the word ‘shall,’ § 27-13-71' would impose on an insured a statutory duty to pursue administrative remedies upon every rejection of an application for a rate reduction, even where the insured is satisfied with the insurer’s' explanation of. the denial or where the insured lacks the means or is disinclined to pursue further action. Such a construction would lead to an unreasonable result. We consider the more reasonable interpretation of ‘may’ as used here to be an expression of the legislature’s intent that an insured lodging a complaint was not required to pursue the complaint further if it did not so desire and not the sanction of alternative remedies independent of the Insurance Code. Accordingly, the legislature’s use of the word ‘may’ need not be read so broadly as Peacock contends and, in the context of the entire Insurance Code and the legislative authority over rate-making, discussed below, should not be so read.
' “Viewing the Insurance Code as a whole, see Bright [v. Calhoun, 988 So.2d 492, 497-98 (Ala.2008)], as allowing a court, outside the appellate review provided for in the Insurance Code, to determine, in proceedings as to which the commissioner is not a party, that a rate approved by the commissioner is unreasonably high would allow that court to require insurers to apply rates independently of the commissioner’s involvement. Such a construction of § 27-13- ■ 71 would enable courts to interfere with the regulatory power granted the commissioner by the legislature’under § 27-13-68. Furthermore, it would enable courts to require insurers in proceedings between an insurer and an insured to apply unapproved rates and, therefore, to engage in conduct prohibited by other sections of the Insurance Code. See *362 §§ 27-13-67 and. 27-13-76. However, as this.Court has stated in another context, ‘the matter of rate making is legislative, and the courts have no right to sit as a board of review to substitute their ■judgment for that of the Legislature, or its agents in matters within the province of either.’ City of Birmingham, 234 Ala. at 531, 176 So. at 305.
“The legislature has created a narrow exception to the principle that rate-making is a legislative prerogative by the procedures established in §§ 27-13-71 and 27-13-81. Under § 27-13-71, an insured dissatisfied with a rate' may apply to the insurer for a rate reduction and then to the commissioner if the in- ' sured does not receive a reduction from the insurer. Under § 27-13-81, the insured may, thereafter, obtain judicial review of the commissioner’s decision first by means'of a writ of certiorari to the Montgomery Circuit Court and then by means of an appeal to the Court of Civil Appeals. Through these procedures, the legislature has created a limited means by which courts may review the commissioner’s rate-making decisions. Sections 27-13-71 and 27-13-81 authorize judicial review only in this context. Peacock’s construction of ‘may’ as that word is used in § 27-13-71 would sanction an unbridled expansion of this, exception ' inconsistent with the general rule that the judicial branch lacks authority to set. rates. We decline to ascribe such intent to the legislature based solely on the use of the word.‘may’ in the context here presented.' Consistent with the authority granted the . commissioner by the legislature and the limited judicial review of the commissioners decisions, we conclude that the insured must exhaust his or her administrative remedies before the commissioner before turning to the courts for relief.”
Ex parte Cincinnati Ins. Co., 51 So.3d at 303-08 (some emphasis added; footnotes omitted).
After explaining the authority of the commissioner and the Department, this Court first concluded that Peacock’s allegations fell within the jurisdiction of the commissioner because, the Court said, Peacock’s allegations challenged Cincinnati’s rates and/or rating systems. Ex parte Cincinnati Ins. Co., 51 So.3d at 308. Specifically, this Court noted that Peacock’s complaint contained, among others, the following allegations: “‘This action challenges [Cincinnati’s] systematic and ongoing practice of improperly imposing and collecting premiums for certain [UM] insurance coverage when issuing multi-vehi-cle auto insurance policies in the State-of Alabama’ Cincinnati “ ‘overcharges! for UM coverage* and ‘ehargl’es] more than is necessary to provide maximum UM coverage under the contract’ “Cincinnati receives ‘impropér gains .., at the expense of insureds and premium payors’”; Cincinnati “ ‘has engaged in a widespread and systematic practice of imposing amd collecting premiums for certain unnecessary, improper, and illusory UM coverage when issuing multi-vehicle policies in Alabama’ ”; Cincinnati “‘has breached contracts with [Peacock] and class members by .requiring amd. collecting for additional UM coverage for which there was no consideration flowing from [Cincinnati], as the required additional coverage was illusory and< of no additional benefit’ ”; and Cincinnati’s “ ‘practice, of requiring (and collecting for) additional UM coverage as described herein is improper,’ ” Id. at 308-09. The allegations in Peacock’s complaint, this Court determined, were “a matter squarely within the exclusive jurisdiction of the commissioner” Id. at 309 (citing §§ 27-13-65 and 27-13-68 (emphasis added)).
*363 The allegations in the complaint filed by Vernon, as the original class representative, are nearly identical to the allegations in Cincinnati’s complaint, as set forth above. In its complaint, Vernon alleged, among other things, that AMIC “eol-lect[ed] premiums for UM/UIM coverage and fail[ed] to provide the coverage for which the class members had paid”; that “policyholders paid for UM/UIM coverage and AMIC failed to provide it”; that the “[plaintiffs ... havetnot received and are not receiving valid UM/UIM coverage while, at all times relevant hereto, they have paid premiums for such coverage”; that “AMlC’s--practice of collecting UM/ UIM premiums and not providing valid contracted UM/UIM coverage constitutes a breach of its contracts to Plaintiffs”; and that “[p]laintiffs failed to obtain the benefit of their bargains, and AMIC consequently was unjustly enriched.” Thus, under Ex parte Cincinnati Insurance Co.,-the allegations in the complaint originally fflod by Vernon presented issues squarely within the exclusive jurisdiction of'the commissioner.
Next, this Court concluded in Ex paHc Cincirmati Insurance Co. that the fíled-rate doctrine precluded judicial review of Peacock’s claims because the essence of his claims was that the commissioner improperly, approved Cincinnati’s forms and rating plans regarding ÜM coverage on more than three vehicles listed as covered vehicles in a Cincinnati policy. 51 So.3d at 305-06 (“‘The filed-rate doctrine provides that once a filed rate is approved by - the appropriate governing regulatory agency, it is per se reasonable and is-unassailable in judicial proceedings."’ (quoting Birmingham Hockey Club, 827 So.2d at 78 n. 4)).[3]' This Court also rejected Peacock’s claim that he .was not required to exhaust his administrative remedies because, Peacock claimed, administrative review would be futile.[4] Ex parte Cincinnati Ins, Co., 51 So.3d at 310. Accordingly, this Court held that, ‘‘under either of Peacpck’s alternative contentions the Tallapoosa Circuit Court exceeded its discretion when it denied Cincinnati’s motion. to dismiss,” id, and, therefore, Peacock’s action was due, to. be dismissed under the fíled-rate doctrine and. because Peacock had failed to exhaust, his administrative rpmedies, id, at 310.
In the present ease, the allegations set forth in the complaint áre all directly tied to the provision of AMIC’s insurance policy that excluded coverage to any person covered by the policy who has collected benefits under the Alabama Workers’ Compensation Act. Spéeifically, by alleging that AMIC charged for UM/UIM coverage but then deviated from the agreed-to coverage by amending the insurance policy to exclude from coverage virtually every person who could properly collect benefits'under the policy, Vernon,'the orig *364 inal -class"-representative, claimed that AMIC’s rates under the policy were excessive,- i.e., that premiums were collected but that only illusory (effectively nonexistent) coverage < was provided — that matter is “squarely within the exclusive jurisdiction of the commissioner.” Ex parte Cincinnati Ins. Co., 51 So.3d at 309. Because the class plaintiffs take issue with AMIC’s forms and rating plans, both of which involved the commissioner’s approval, the filed-rate doctrine precludes judicial review. 51 So.3d at 309 (citing Birmingham Hockey Club, 827 So.2d at 78 n. 4).
It is undisputed that Fairfield, as the new class representative, has not exhausted its administrative remedies. Fair-field argues, as an exception to the general rule of exhaustion of administrative remedies, that exhausting its remedies before the commissioner and the Department is unnecessary because, Fairfield says, “the action raises only questions of law and not matters requiring administrative discretion or an administrative finding of fact.” (Quoting Ex parte Cincinnati Ins. Co., 51 So.3d at 310, quoting in turn Budget Inn of Daphne, Inc. v. City of Daphne, 789 So.2d 154, 157 (Ala.2000).). Fairfield also argues, as an exception to the general rule of exhaustion of administrative remedies, that its “available remedy is inadequate” (quoting. id.), because, Fairfield says, the trial court, rather than the commissioner and the Department, have the authority to provide the requested relief.
Fairfield is incorrect in stating that this action presents only questions of law and that there are no matters requiring an administrative finding of fact. As just one example, which is taken from the briefs filed with this Court, Fairfield asserts that Steve Wells, president of AMIC, knew that the exclusionary provision of the UM/UIM coverage was “contrary to Alabama law” but that, nonetheless, “AMIC failed to remove the offending exclusion from its UM/ UIM policy until after this action was filed.” Fairfield’s brief, at 30. Stated differently, Fairfield asserts that AMIC willingly placed the exclusionary provision in the insurance policy and removed it only after its insureds filed suit to recover the premiums they had paid for the illusory coverage. On the other hand, AMIC asserts that the exclusionary policy, which it allegedly knew was “contrary to Alabama law,” was added- not because of its desire to add it but, instead, “was added -at the insistence of members of the proposed class!” AMIC’s original appellant’s brief, at 27 (emphatic punctuation in original). There is little doubt that the commissioner and the Department would find highly factually relevant whether the class plaintiffs, who now complain of the exclusionary provision of the insurance policy and the financial loss they claim to have suffered from that provision, actually insisted on including the provision in the policy. Furthermore, Fairfield’s argument that it is excepted from exhausting its administrative remedies because of the alleged lack of an adequate remedy is meritless. As noted above, Fairfield may seek redress of an adverse judgment from the commissioner by filing a petition for a writ of certiora-ri in the Montgomery Circuit Court, and then, if redress is not granted, it may seek relief from the Alabama Court of Civil Appeals. See Ex parte Cincinnati Ins. Co., 51 So.3d at 305 (citing § 27-13-81, Ala. Code 1975).
In sum, this case is quite similar to Ex parte Cincinnati Ins. Co., supra, and requires the same disposition. • The filed-rate doctrine requires dismissal of this action, as does first Vernon’s and now the class plaintiffs’ failure to exhaust its administrative remedies. Cf. Ex parte Cincinnati Ins. Co., 51 So.3d at 311 (“[T]he filed-rate doctrine requires dismissal, as does Pea *365 cock’s failure to exhaust administrative remedies with the commissioner and the Department before seeking redress from the courts.”). Accordingly, we vacate the trial court’s class-certification order and dismiss the appeal.
ORDER VACATED; APPEAL DISMISSED.
STUART, BOLIN, PARKER, MURDOCK, SHAW, WISE, and BRYAN, JJ., concur.
MOORE, C.J., dissents.

. AMIC “is a non-profit, mutual insurance company that insures municipalities and governmental bodies throughout Alabama.” AMIC’s supplemental brief, at 7.

. " ‘Coverage is illusory "[w]hen limitations or exclusions completely contradict the insuring provisions,”:and such "coverage” is not countenanced in this State.’ ” Alabama Mut. Ins. Corp., 178 So.3d at 353 (quoting the trial court’s class-certification order).

. This Court also rejected an alternativo argument advanced by Peacock regarding application of the filed-ratc doctrine because, this Court stated, “the transcript on which Peacock now relies was not before the trial court when it ruled on Cincinnati's motion to dismiss. '[Tijvidonee not presented to the trial courL will not be considered in [an appellate] proceeding,’ Ex parte Volvo Trucks North America, Inc., 954 So.2d 583, 587 (Ala.2006)," Ex parte Cincinnati Ins. Co., 51 So.3d at 309. Furthermore, this Court found that Peacock's álternative argument, the basis of which does not: bear repeating because it was based on evidence not properly before this Court, was "misdirected." Id.

. One of the four exceptions to the general rule of exhaustion of administrative remedies is that “ 1 "the exhaustion of administrative . remedies would be futile.,.,””' Ex parte Cincinnati Ins, Co., 51 So.3d at 310 (quoting Budget Inn of Daphne, Inc. v. City of Daphne, 789 So.2d 154, 157 (Ala.2000)).